# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF IDAHO

IN RE                                    )
                                         )        **Case No. 17-00607-TLM**
MARK D. COLAFRANCESCHI SR., )
                                         )        **Chapter 13**
                    Debtor.          )
_____ )

## MEMORANDUM OF DECISION
_____

## INTRODUCTION

The matter before the Court is an objection by Todd Wilcox and Julie

Neustadt ("Objectors") to the homestead exemption claimed by Chapter 13 debtor

Mark Colafranceschi ("Debtor").[1]  *See* Doc. No. 28 (the "Objection").  While there

are a number of other issues raised in regard to this chapter 13 case, they pend

until the Objection is resolved.[2]  The Objection came on for an evidentiary hearing

on September 18, 2017.  Debtor was the only witness examined at that hearing.  At

the close of evidence and following argument, the matter was taken under

advisement.  This Decision constitutes the Court's findings and conclusions on this

contested matter pursuant to Rules 7052 and 9014.

_____

[1]  Unless otherwise indicated, all statutory references are to the Bankruptcy Code, Title 11 U.S. Code §§ 101-1532 and Rule references are to the Federal Rules of Bankruptcy Procedure.

[2]  Debtor's chapter 13 plan includes provisions seeking to avoid the Objectors' judgment liens under § 522(f)(1)(A).  Objectors oppose that motion and plan confirmation, and they also have moved to dismiss or convert the case.

**PROCEDURAL HISTORY**

On May 16, 2017, Debtor filed his voluntary petition for relief. Doc. No.

1.[3] In his bankruptcy schedules, Debtor listed an ownership interest in real

property located at 3330 Highway 55, New Meadows, Adams County, Idaho (the

"Property"). He listed this as his address on the petition, but indicated his mailing

address was 323 Deinhart Lane, Ste. B, McCall, Idaho.[4] His statement of financial

affairs asserts that from May 2016 to the petition date he lived "on & off" at the

Property and "on & off" at 655 Lichen Lane, Letha, Idaho.[5]

----

[3]   The Court takes judicial notice of its record. Fed. R. Evid. 201. As this Court
previously explained in *In re Frantz*, 534 B.R. 378, 380, n.4 (Bankr. D. Idaho 2015), judicial
notice establishes what was filed and when, but only certain contents of such filings can be given
evidentiary weight:

> The Court takes judicial notice of its files and records to outline the history of the
> case and the present disputes. However, as it cautioned counsel at hearing, taking
> notice of what was filed, and when, does not mean the contents of the filings
> necessarily have evidentiary weight. *Credit Alliance Corp. v. Idaho Asphalt Supply,
> Inc. (In re Blumer)*, 95 B.R. 143, 146–47 (9th Cir. BAP 1988); *see also Mora v.
> Vasquez (In re Mora)*, 199 F.3d 1024, 1026 n.3 (9th Cir.1999) (citing *Blumer* with
> approval). *But see In re Vee Vinhnee*, 336 B.R. 437, 449 (9th Cir. BAP 2005)
> (entries on debtor's verified bankruptcy schedules and statements, when offered
> against debtor, have evidentiary effect under Fed.R.Evid. 801(d)); *Jordan v.
> Kroneberger (In re Jordan)*, 392 B.R. 428, 444 n.32 (Bankr. D. Idaho 2008) (same).

[4]   The petition indicates Debtor's business ("Dr. Cola's Clinic PLLC") is located at this
address. Debtor works as a chiropractor. *See* sched. I. He shows no ownership interest in this
McCall property. He lists the same on schedule G as being leased on a month to month basis,
though no rent expense appears on schedule J. *See* Doc. No. 1 at scheds. A/B, G, J.

[5]   Debtor's schedules show no ownership or leasehold interest in any "Letha, Idaho"
property, nor does any other evidence suggest the existence of any such property. The Court
concludes this is a reference to 655 Lichen Lane in McCall, Idaho. *See e.g.*, *infra* note 24. Why
Debtor would affirmatively use a Letha, Idaho location and zip code is unclear.

MEMORANDUM OF DECISION - 2

Debtor's initially filed schedules attributed a value of $95,000 to the

Property.  He described the Property as consisting of 13.5 acres with a mobile

home trailer (which he rents to others), a storage shed or building (not rented out),

and a small 15' by 20' cabin with no plumbing whatsoever.  Debtor testified that

he had made some improvements to the Property consisting of pouring a concrete

foundation for a future residence and installing a septic tank.  *See also* Doc. No. 1

at 10 (schedule A/B, describing Property).  In discovery responses, Debtor outlined

the extent of improvements from 2000 to 2016 including the foregoing and other

items such as fencing, and work on a well and well house.  Ex. 208 at 10–11.

When he stays at the Property, it is apparently in the small cabin which has power

but no water or plumbing facilities.  Debtor worked on plans for a house, Ex. 105,

and provided a few miscellaneous receipts for materials used on the property.  Exs.

104, 106, 107.

Debtor claimed a homestead exemption of $100,000 in the Property

pursuant to Idaho Code §§ 55-1001, 55-1002, and 55-1003.  Doc. No. 1 at 17

(schedule C).  Debtor's schedule D indicated no creditors with secured claims

against the Property.

Debtor scheduled Durena Schoonover ("Schoonover") as holding three

unsecured claims for attorneys' fees totaling $44,520.50.  *Id.* at 24–25.  He

indicated each of these claims was "disputed."  Debtor listed as unsecured

MEMORANDUM OF DECISION - 3

creditors a number of other creditors holding judgments. One of these was Julie

Neustadt ("Neustadt"), shown as holding an unsecured but disputed claim of

$50,000 under a judgment for attorneys' fees. *Id.* at 25. Debtor listed a host of

attorneys to be notified in relation to these creditors. *Id.* at 24–27. One of these

attorneys, Todd Wilcox ("Wilcox"), was listed as counsel on the claims held by

Schoonover. *Id.* at 27. Scott Ludwig was listed as the attorney for Neustadt. *Id.*

On June 21, 2017, Wilcox timely filed a proof of claim, No. 6-1, asserting a

claim of $52,351.81 as of the petition date arising from "Judgment" and secured

against the Property. Ex. 200. Wilcox's claim indicates it was acquired by him

from Schoonover and he attached several separate judgments awarding attorneys

fees and costs to Schoonover in the case of *Colafranceschi v. Schoonover*, Case

CV 2010-312-C in the District Court of the Fourth Judicial District of the State of

Idaho, in Valley County.[6]

Neustadt filed a proof of claim on June 15, 2017, No. 5-1, and an amended

claim, No. 5-2, on September 7. She asserts a $50,000 judgment claim also

secured by the Property. Attached to the claim is a copy of a judgment in *Neustadt*

*v. Colafranceschi*, Case No. CV-2016-125-C, entered in the Fourth District Court,

---

[6] Several of the judgments reflect they were recorded in the real property records of
Adams County, which is required under Idaho Code § 11-609 in order to obtain a judgment lien
on the Property. They were recorded on Nov. 8, 2012 ($4,829.25 and $1,045.00), and May 5,
2015 ($35,175.50). These total only $41,049.75. Other judgments attached to the claim do not
reflect such recordation. The Court does not today address the amount or status of the alleged
claim.

MEMORANDUM OF DECISION - 4

Valley County, on February 8, 2017.  This judgment was recorded in the Adams

County real property records on February 16, 2017.[7]

On June 13, 2017, Wilcox and Neustadt (represented by the same counsel)

filed the Objection challenging Debtor's homestead exemption.

On July 28, 2017, Debtor amended his schedules to provide a value of

$111,500 for the Property.  Doc. No. 47 at 1.  This was based upon an appraisal

obtained by Debtor in July 2017.  Ex. 100.[8]

**ADDITIONAL FACTS**

The examination of Debtor did not make particularly clear the facts

regarding his ownership of and transactions relative to the Property.  The approach

to the issues taken by the parties' counsel did not help clarify those facts.

Challenges abound in determining, with any accuracy, the Property's history and

status.[9]

---

[7]  Neustadt and Debtor also stipulated to stay relief so another action, *Colafranceschi v. Neustadt*, Case No. CV-2017-98-C in the Fourth Judicial District Court, Valley County, could proceed to judgment, at which time the litigants would return to this Court to address such judgment.  Doc. Nos. 40, 42.

[8]  The last amended chapter 13 plan filed by Debtor, Doc. No. 54 (Aug. 21, 2017), provides for payment of $11,500 of the judgment lien claim of Wilcox, a proposal driven by the amendment of the value of the Property in schedule A ($111,500), the limit of the Idaho homestead exemption ($100,000), and the judgments he recorded prior to that of Neustadt.  The balance of Wilcox's lien is to be avoided under § 522(f)(1)(A).  Objectors oppose confirmation of the plan on this and other grounds.  As noted, these matters have been held in abeyance pending resolution of the Objection.

[9]  The same challenges attend other factual issues.  The parties seemed to assume the Court somehow had the same degree of familiarity with underlying parties, litigation, and

(continued...)

MEMORANDUM OF DECISION - 5

Debtor's responses to discovery, Ex. 208 (at responses to interrogatories 9 and 14), and his testimony at hearing, have been considered.  The Court has also considered the decision of the Idaho Fourth District Court in another case, *Colafranceschi v. Schoonover*, Case No. CV-2011-503-C, entered on September 4, 2015.  Ex. 102; Ex. 214 ("State Court Decision").[10]  From these sources, and Debtor's testimony at hearing, the following is derived.

Debtor purchased the Property in 2000 or 2001 with his wife Susie Ericson ("Ericson").  In October 2003, Debtor and Ericson divorced.  The divorce decree and/or associated settlement required Debtor to pay Ericson either $40,000 or $43,000 for her equity in the Property and to do so by August or September 2004.[11]  In 2005, in order to satisfy the obligation to Ericson, Debtor borrowed $43,000 from Schoonover.  Debtor and Schoonover had a relationship at the time, and would periodically live with one another.[12]  Debtor asserts he lived on the

---

[9] (...continued)
disputes as they had.  They also provided incomplete documents in evidence, including the stipulated introduction of 23 scattered pages taken out of 2 different deposition transcripts that, based on the pages in the exhibits, were over 70 and 56 pages in length.  Exs. 206, 207.

[10]  Case No. 503-C was a suit Debtor brought claiming Schoonover committed battery upon him and converted his personal property.  The District Court awarded $500.00 in emotional distress damages for the battery and $1,910.00 for conversion of property.  *Id.*

[11]  Inconsistencies and equivocations in dates, amounts and other details in this narrative simply reflect the direct conflicts, or lack of precision, in Debtor's discovery responses, the state court's findings, and the parties' evidentiary presentations.

[12]  Schoonover apparently had a residence in Donnelly, Idaho.

MEMORANDUM OF DECISION - 6

Property in 2005 until he moved from it in August 2006.

In September 2005, Debtor sold 5 acres of the Property to a third party, retaining roughly 13 acres, though the retained portion was subject to an easement to that buyer. The State Court Decision found that this sale generated $190,000 which was used to satisfy debt (*i.e.*, a "loan" of $60,000 to $80,000) on the Property, some engineering fees related to the division of the Property to accomplish the 5 acre split and sale, taxes, a car loan, vacation expenses Debtor and Schoonover had incurred, and his purchase of a diamond ring for Schoonover.

Schoonover accessed a line of credit in order to loan Debtor $43,000. The State Court Decision found that in December 2005, Debtor deeded the Property to Schoonover. The concept, apparently, was that this would "secure" Schoonover as Debtor made payments to her on the loan.

But the parties also intended that Debtor would get the Property back from Schoonover when he satisfied the $43,000 debt. Debtor and Schoonover, allegedly with the assistance of an attorney, executed several documents to provide a semblance of security for the return of the Property to Debtor when the loan was repaid.[13]

Schoonover executed a purchase and sale agreement ("PSA") indicating she

---

[13]  The identity of the attorney was not entirely clear.

MEMORANDUM OF DECISION - 7

was "buying" the Property for a net amount of $135,000.[14]  A promissory note in

that amount was executed as of December 5, 2005.  Ex. 101 at 2 ("Note").  It

provided for interest to accrue at 4% and for payments by Schoonover to Debtor to

start on January 15, 2007, with the obligation maturing and becoming due

December 1, 2010.  The State Court Decision found that no payments were ever

made on the Note.

The Note was secured by a deed of trust also dated December 2, 2005.  Ex.

101 at 3 ("DOT").[15]  This DOT shows Schoonover as the grantor and Debtor as the

beneficiary.  But there is no identified trustee to which the Property is transferred

in trust.  The copy of the document now before the Court also fails to show that it

was ever recorded.

The third document in this exhibit is an "appointment of trustee."  Ex. 101

at 1.  It was recorded as Instrument No. 123897 on August 8, 2012.  It alleges that

Schoonover as grantor under the DOT (which DOT, this document alleges, was

recorded on August 6, 2012 as Instrument No. 123887) had failed to identify a

trustee and, therefore, she was appointing C. Ward Enterprises, Inc., dba

Timberline Title & Escrow, Inc., as trustee under the DOT.  But, this document is

not signed by Schoonover.  It is signed by Debtor as "the present beneficiary"

---

[14]  A copy of the PSA was not provided.

[15]  The Note, DOT, and a third document were all combined by Debtor into a single
exhibit.

MEMORANDUM OF DECISION - 8

under the DOT because he "desires to appoint a trustee[.]"[16]

The State Court Decision found that Schoonover also executed a quitclaim deed on the Property, which was intended to be used to convey the Property back to Debtor when the $43,000 obligation was repaid.  It also found that, at such time as the obligation was repaid, the parties intended that the deed of trust and note would no longer be necessary and "be deemed worthless."[17]

The State Court decision found that Schoonover had little understanding about any of these documents and signed them at Debtor's behest.

Debtor and Schoonover started living together in 2005 or 2006 and, in 2007, they had a child together.  They also went into business, with Schoonover working at Debtor's clinic, and the two of them also establishing and running a wine shop.

As noted, Schoonover had agreed to deed the Property back to Debtor upon repayment of his debt to her.  In 2008, Debtor obtained a 5 acre parcel from a third

---

[16]  The attempted appointment of trustee thus occurred almost 7 years after the original transaction.

[17]  Objectors' counsel asserted at the hearing that transferring ownership of property is an unusual way to secure a debt.  When Debtor was questioned about his reasons for transferring ownership to Schoonover rather than simply granting her a security interest in his Property, he explained that his ex-wife, Ericson, made death threats against Debtor and he wanted to ensure that "if things went bad," Schoonover had ownership of the Property and could sell it to satisfy his debt.  Also, in the event of such a sale, Debtor said he expected Schoonover would keep the excess funds above what he owed.  Debtor mentioned having a son with Schoonover and seemed to allude to this arrangement as being a means of protecting Schoonover regarding the debt and also providing for Schoonover and the couple's son in the event "things went south."

party in exchange for an easement across the Property.  The 5 acres was conveyed

to Debtor and Schoonover jointly.  Schoonover agreed to release her interest in this

new parcel, and Debtor then used it as collateral for a bank loan of $110,000 and a

line of credit for $40,000.  Debtor used the loan to pay off the obligation owed to

Schoonover.  In return, Schoonover signed and delivered a quitclaim deed to

Debtor, in order to transfer ownership of the Property back to him.[18]  However,

Debtor did not record the 2008 quitclaim deed.  He instead stored it in a desk

drawer in his office.

In August 2010, Debtor found that this 2008 quitclaim deed was missing, as

well as a diamond ring he believed was in his office.  The State Court Decision

found that Schoonover admitted destroying this deed in 2009, but that she actually

did so in 2010.[19]

On the whole of the record before it, the State Court Decision concluded

that "On July 19, 2008, [Debtor] became the sole legal owner of the Goose Creek

Property."  Ex. 102/Ex. 214 at 10.  It concluded the PSA and DOT were

"worthless" even though Debtor recorded the DOT and had threatened Schoonover

with "a frivolous lawsuit which he call[ed] a 'judicial foreclosure'" of the DOT.

---

[18]  The evidence suggests there was a quitclaim deed created for this purpose at the outset of the 2005 DOT/note/PSA transaction but, for some reason, the parties needed to create another in 2008.

[19]  Ex. 102/Ex.214 at 4 (Schoonover's admission), and at 10 (Court's conclusion it was more reasonable to believe she destroyed it in 2010 after the parties' breakup).

MEMORANDUM OF DECISION - 10

*Id.*

After terminating his relationship with Schoonover, Debtor cohabited with Neustadt from 2011 to July 2012, and then they married on July 26, 2012.  Ex. 208 at 6, 9.[20]  On October 12, 2012, allegedly acting on advice from a title company, Debtor filed a declaration of homestead exemption on the Property.  Debtor therein certified that "I do now, at the time of making this declaration, actually reside on the lands and premises herein described."  Ex. 201 (Instr. 124165) (the "First Homestead Declaration").  He did not.  Debtor had lived on the Property in 2005, but he moved from it in 2006.  Ex. 208 at 4 (discovery responses).  While there was a trailer on the Property thereafter, Debtor did not live in it.  *Id.* at 7–8 (regarding Debtor's renting the trailer to third parties).  Debtor claims to have lived at the "Julie Property" from March 2013 to May 2016.  *Id.* at 5.[21]  Debtor asserted that he did not return to the Property to live until May 2017.  *Id.* at 4; *but see* Doc. No. 1 at 36 (indicating he lived "on & off" at the Property and in Letha, Idaho from May 2016 to the date of filing).

---

[20]  They later divorced.  Debtor in Case No. CV-2017-98-C alleged this divorce occurred in March 2017, *see* Ex. 209 at 2, though his discovery responses state that it was in December 2016.

[21]  The discovery responses do not contain the actual discovery requests which define the "Julie Property."  However, Debtor elsewhere acknowledges marrying Julie Neustadt in July 2012 and that they were divorced in December 2016.  *Id.* at 6.  The "Julie Property" appears to refer to Neustadt's residence.  Her address is shown on Debtor's master mailing list as 408 Osprey Drive in McCall, Idaho.  That is also the address shown on Debtor's statement of financial affairs where he said he lived from March 2013 to May 2016.  Doc. No. 1 at 36.

MEMORANDUM OF DECISION - 11

Debtor testified that shortly after recording the First Homestead Declaration on October 12, 2012, and allegedly having read that document only after it was filed (notwithstanding his contemporaneous acknowledgment on it), Debtor contacted the title company and explained that he did not actually reside on the Property. Debtor says he was told to execute and file another declaration of homestead exemption, but to declare therein his "intent to reside" on the Property in the future.[22] Debtor did so. Ex. 103/Ex.202 (Instr. 124198) (the "Second Homestead Declaration") (stating that "I do now, at the time of making this declaration, actually intend to reside" on the Property). Both of these declarations include a reference to Neustadt as a spouse, but assert that the Property is Debtor's separate property. The First Homestead Declaration also stated that "wife has no claim."

Debtor's testimony and explanation regarding the sequencing of these two filings does not accord with the actual dates on the two declarations. The "erroneous" First Homestead Declaration in which Debtor certified that he resided on the Property was signed on October 11, 2012 and recorded on October 12, 2012. The "corrective" Second Homestead Declaration in which he expressed that he intended to live on the Property was indeed recorded later on October 18, 2012,

---

[22] Debtor testified that Timberland Title provided this alleged advice.

MEMORANDUM OF DECISION - 12

but it bears a signature date of October 5, 2012.[23]

Finally, on May 8, 2017, approximately 8 days prior to filing his

bankruptcy petition, Debtor filed a "declaration of nonabandonment of homestead"

in which he again claimed the Property as a homestead and said "I intend to reside

at this property[]."  Ex. 203 ("Nonabandonment Declaration").[24]  Debtor testified

that this filing was made on the advice of a bankruptcy attorney, but not the one

representing him in this case.

**DISCUSSION AND DISPOSITION**

   **A.     Property of the estate**

Under § 541(a)(1), all legal and equitable interests of a debtor in property as

of the date of filing become "property of the estate."  Ordinarily, any disagreement

or question of whether property is or is not property of the estate requires

adjudication through an adversary proceeding.  *See* Rule 7001(2).  That did not

here occur, but the parties are deemed to have waived that procedural requirement.

The parties could have easily clarified the record ownership status of the

Property, for example, through a title report.  They did not.  Instead, they

wandered though the parties' convoluted PSA/DOT lending concept, inconsistent

---

[23]   The Debtor's signatures on such dates were acknowledged, with the same October 11 and October 5 dates respectively, by two separate notaries public.  Exs. 201; 103/202.

[24]   The Nonabandonment Declaration indicates Debtor was "temporarily residing" at the time of its filing at "655 Lichen Lane, McCall, Idaho 83638."  He continued to reside there until July 2017.

MEMORANDUM OF DECISION - 13

and confusing documents, and Debtor's less than precise testimony.  Eventually, this included the State Court Decision's finding that Debtor "became the sole legal owner" of the Property on July 19, 2008, a statement made in connection with that court's attempt to address Debtor's claim of "conversion" for Schoonover taking the quitclaim deed as well as other personal property.[25]  This has put the Court to much unnecessary work, and left it with a less than desirable record.

The State Court Decision found that Debtor deeded the Property to Schoonover in 2005.  Beyond that, the Court has no competent evidence of Schoonover ever being in title, which impacts the validity of the DOT among other things.[26]  However, Debtor claims to own the Property as of the petition date. Whether that is due solely to the State Court Decsion's findings rendered in connection with the conversion claims is not clear.[27]

Though Objectors did not provide a title report, they did introduce an Adams County Assessor's report that covers assessments from 2010 to 2015.  *See* Ex. 204.  On each, the assessor first identifies Debtor by name and then

---

[25]  The court awarded Debtor $200 in damages for the conversion of the deed.  Ex. 214 at 12.

[26]  The absence of a named trustee in the DOT is another problem, as is Debtor's subsequent unilateral attempt as beneficiary to name a trustee.

[27]  The parties provided the State Court Decision, but not any judgment thereon.  The Court has no way of knowing if a judgment was entered, or whether it clearly established Debtor's ownership.  Nor does the evidence reflect recordation of any such judgment establishing Debtor's ownership.

MEMORANDUM OF DECISION - 14

Schoonover, to wit:

> COLAFRANCESCHI, MARK
> % SCHOONOVER, DURENA L,
> 323 DEINHARD LN, SUITE B
> MCCALL ID 83638

*Id.*[28]  Whether this merely indicates a mailing address "in care of" Schoonover, or the existence of some "co-owner interest" in her is not clear.  But it does indicate Debtor's ownership.[29]

Practically speaking, it is in Debtor's interest to claim the Property as owned and to assert and defend a homestead exemption claimed on it.  It is also in Objectors' interest, given Debtor's chapter 13 filing, to acknowledge that Debtor owns the Property (there otherwise being nothing to which their judgment liens would attach) but to attempt to defeat the exemption claim in order to preserve those liens from potential avoidance under § 522(f)(1)(A).  While this congruence of practical interest may indicate why they all seem to assume ownership is established, it does not excuse the manner in which the factual record was presented.

---

[28]  The spelling of the street address on the assessments (Deinhard) is different from "Deinhart" as used in Debtor's filings; the discrepancy was not explained.  In addition, the 2011 parcel master/history inquiry shows a PO Box in Donnelly, Idaho, as the Property owner's mailing address, however, it is still addressed to "Colafranceschi, Mark % Schoonover, Durena L."

[29]  Idaho Code § 63-307 requires assessors to ascertain the current ownership of land from documents recorded in the county recorder's office or from evidence of ownership furnished to the assessor.  I.C. § 63-307(1).  If the owner of any property is not known to the assessor, he or she must assess the property in the name of "unknown owner."  I.C. § 63-307(4).

MEMORANDUM OF DECISION - 15

The Court finds and concludes—for purposes of this Decision only—that the Property is property of the estate.

## B.    Objection to a claim of exemption

This Court has previously summarized:

> [T]he objecting party . . . bears the burden of proving that Debtor's claim of exemption is not proper. Rule 4003(c); *Carter v. Anderson (In re Carter)*, 182 F.3d 1027,1029 n. 3 (9th Cir. 1999); *In re Kline*, 350 B.R. 497, 502 (Bankr. D. Idaho 2005). The validity of the claimed exemption is determined as of the date of filing of the bankruptcy petition. 11 U.S.C. § 522(b)(3)(A); *Culver, L.L.C. v. Chiu (In re Chiu)*, 266 B.R. 743, 751 (9th Cir. BAP 2001); *In re Yackley*, 03.1 I.B.C.R. at 84. The homestead exemption statutes are to be liberally construed in favor of the debtor. *In re Kline*, 350 B.R. at 502 (citing *In re Steinmetz*, 261 B.R. 32, 33 (Bankr. D. Idaho 2001); *In re Koopal*, 226 B.R. 888, 890 (Bankr. D. Idaho 1998)).

*In re Cerchione*, 398 B.R. 699, 702–03 (Bankr. D. Idaho 2009), *aff'd*, 414 B.R. 540 (BAP 9th Cir. 2009). If the objecting party presents sufficient evidence to rebut the prima facie validity of the exemption, the burden shifts to the debtor to demonstrate the exemption is proper. *In re Wiley*, 352 B.R. 716, 718 (Bankr. D. Idaho 2006).

### 1.    Idaho's Homestead Exemption

As defined in the Idaho Code:

> (2) "Homestead" means and consists of the dwelling house or the mobile home in which the owner *resides or intends to reside*, with appurtenant buildings, and the land on which the same are situated and by which the same are surrounded, or improved; or unimproved land owned with the intention of placing a house or mobile home thereon. . . . Property included in the homestead must be actually intended or used as a principal home for the owner.

MEMORANDUM OF DECISION - 16

Idaho Code § 55-1001(2) and (4) (emphasis added).

Consistent with this definition, Idaho Code § 55-1004 provides two means by which a homestead exemption may be established. That section provides, first, that a homestead exemption arises automatically "from and after the time the property is *occupied* as a principal residence by the owner. . . ." I.C. § 55-1004(1) (emphasis added). Second, it provides "[a]n owner who selects a homestead from unimproved or improved land that is not yet occupied as a homestead must execute a declaration of homestead and file the same for record in the office of the recorder of the county in which the land is located[.]" I.C. § 55-1004(2).

### a.      Occupation as a principal residence

Debtor lived with Ericson, Schoonover, and Neustadt since originally acquiring the Property. After the relationship with Neustadt ended, Debtor asserted that he lived "on & off" at the Property but also at another residence, 655 Lichen Lane, presumptively in McCall, from May 2016 to the petition date of May 16, 2017. But he suggested in discovery responses that he returned to the Property to live "in May 2017."[30]

According to the testimony, when Debtor is on the Property he stays in the small cabin which has electrical power but lacks running water or bathroom

---

[30] Ex. 208. Those responses by Debtor were dated August 21, 2017. At one point he states that he "currently resides there" [i.e., the Property] and at another point he stated he "occasionally returns to this property at the present time." *Id.* at 4–5.

MEMORANDUM OF DECISION - 17

facilities.  He says he uses outside water, and has permission from his tenants to use the trailer for his needs, or he uses the facilities at his clinic in McCall.[31]

A homestead by occupation arises "from and after the time the property is occupied as a principal residence[.]"  The evidence, evaluated for consistency, clarity and credibility, does not support the proposition that Debtor has a homestead on the Property by virtue of his occupancy of it as a principal residence.

### b.  The Nonabandonment Declaration

Idaho Code § 55-1006 provides:

> A homestead is presumed abandoned if the owner vacates the property for a continuous period of at least six (6) months.  However, if an owner is going to be absent from the homestead for more than six (6) months but does not intend to abandon the homestead, and has no other principal residence, the owner may execute and acknowledge, in the same manner as a grant of real property is acknowledged, a declaration of nonabandonment of homestead and file the declaration for record in the office of the recorder of the county in which the property is situated.

Under this section, if a homestead is established by residence, it will be presumed abandoned if the owner "vacates" that property and is absent for more than six continuous months.  Abandonment of the homestead can be prevented by filing a declaration of nonabandonment.  In *In re Conley*, 1999 WL 33490228 (Bankr. D. Idaho Dec. 10, 1999), this Court interpreted "the six-month presumption of Idaho Code § 55-1006 as applying *only* to automatic homesteads

---

[31]  Debtor testified that he rents the trailer to parties named McCarty for $550/month. His schedule G indicates the McCartys' rent the trailer and storage space for $500/month.  Doc. 1 at 29.

MEMORANDUM OF DECISION - 18

arising under § 55-1004(1) by virtue of a debtor's occupation." *Id*. at *11 (emphasis added).

The evidence does not establish that Debtor, at any time, created a homestead in the Property by virtue of his occupation of it as a principal residence. It was thus unnecessary for Debtor to file a declaration of nonabandonment. As this Court has explained, "[c]learly, the purpose of Idaho Code § 55-1006 is to provide creditors with notice that a debtor who is not living in a residence for an extended period of time has claimed the residence as a homestead." *In re Cavanaugh*, 175 B.R. 369, 372 (Bankr. D. Idaho 1994). "There is nothing equivalent to the six-month absence, relevant to automatic homesteads, which requires any sort of nonabandonment declaration as to undeveloped property which has previously been expressly claimed as an intended homestead." *Conley*, 1999 WL 33490228 at *11. The Nonabandonment Declaration was not only unnecessary, it has no effect on the existence or nonexistence of a homestead exemption in the Property.

### c.   The declaration(s) in October 2012

Debtor testified that while he and Neustadt were together, they planned to build a house on the Property, in which they intended to reside. Although in 2012 they intended to move forward with their plan, Debtor testified that progress was slowed by Schoonover's assertion of ownership of the Property, and that he and Neustadt feared any money spent improving the Property might be lost to

MEMORANDUM OF DECISION - 19

Schoonover if she was successful.

In addition to Debtor's own testimony regarding his intent to someday reside on the Property, there is other evidence before the Court that supports Debtor had such an intent.  Since purchasing the Property in 2001, Debtor has made improvements to the Property supporting his asserted future intent to reside there.  The improvements include having house plans created (Ex. 105; invoice dated 7/07), having electrical service installed at the Property (Ex. 107; invoice dated 9/06), installing a septic system at the Property (per Debtor's testimony), fencing the Property (Ex. 104; invoice dates in 12/14 and 11/15), installing a well tank (*id*.; invoice dated 4/16), and having a foundation for the house constructed (Ex. 106; invoice dated 8/07).  The appraisal of the Property as of July 2017 indicates a poured foundation, septic system, 12' x 16' "day" cabin, 23' x 140' storage building, well and pump house, and fencing.  The appraisal assigned a value of +/-$48,000 to these improvements.  Ex. 100. All of these facts, taken as a whole, evidence Debtor's intent to reside on the Property at some time in the future.

In October 2012, Debtor filed two declarations.  The First Homestead Declaration asserted that Debtor actually resided on the Property.  This was false and, according to Debtor, filed in error.  The First Homestead Declaration is clearly ineffective to create a homestead in the Property.

The Second Homestead Declaration, on the other hand, indicated that it was

MEMORANDUM OF DECISION - 20

Debtor's future intention to reside on the Property.  Ex. 202.  Under Idaho Code § 55-1004(3), a declaration of homestead must contain: (1) a statement that the person "is residing on the premises *or intends to reside thereon* and claims the premises as a homestead," (2) a legal description of the premises, and (3) an estimate of the premises actual cash value.  Objectors do not dispute that these three requirements are met.  Rather, they argue that this declaration was ineffective in creating a homestead because Debtor was not the owner at the time it was filed.

As discussed, the evidentiary record indicates Debtor and his ex-wife, Ericson, purchased the property in 2001 and were co-owners of the Property until 2005 when, as part of a divorce property settlement, Debtor paid Ericson $43,000 in satisfaction of her interest in the Property and became the sole owner.  In that same year, 2005, Schoonover, purportedly as "grantor" (and, thus, the putative owner of the Property) executed the DOT to secure payment of the promissory note to the benefit of Debtor.  Ex. 101.  The only thing that suggests an ownership interest of Schoonover at that time is the reference to "Mark deed[ing] the Goose Creek property to Durena. (Def. Ex. C)" and to her "sign[ing] a Real Estate Purchase Agreement indicating she was buying the property[.]" *See* Ex. 214 (State Court Decision) at 2.

Despite obvious issues with the documents used in 2005, Debtor in 2008 repaid the obligation to Schoonover.  Schoonover executed a 2008 quitclaim deed to transfer the Property back to Debtor.  Debtor, however, failed to record the 2008

MEMORANDUM OF DECISION - 21

quitclaim deed, and that deed was destroyed by Schoonover in 2009 or 2010. However, the State Court later found that "As a matter of law, Mark became the owner [of the Property] when he received the quitclaim deed from Durena in 2008. Idaho Code § 55-606." *Id.* at 11.[32]

Other evidence indicates Debtor had some ownership interest in the Property at the time of the Second Homestead Declaration in October 2012. The Adams County Assessor's records previously mentioned are consistent in their reference to Debtor (and "% Schoonover, Durena L") from 2010 until 2015. Ex. 204.

Objectors argue that the state court's finding that Debtor became the owner of the Property in 2008 was not pertinent to any issue before that court and, therefore, is mere dictum and should not be relied upon by this Court. It is true that ownership of the Property was not the gravamen of the state court litigation (recall, Debtor was in that suit seeking damages for, *inter alia*, conversion of the deed and recovered $200 on that basis). But contrary to Objectors' argument, the state court's statement that Debtor became the owner of the Property in 2008 did pertain to an issue before the court—whether Schoonover's destruction of the quitclaim deed rendered her liable for Debtor's loss of rental income from the

---

[32] Idaho Code § 55-606 provides: "Every grant or conveyance of an estate in real property is conclusive against the grantor, also against every one subsequently claiming under him, except a purchaser or encumbrancer, who in good faith, and for a valuable consideration, acquires a title or lien by an instrument or valid judgment lien that is first duly recorded."

Property.[33]  In ruling, the state court explained that Debtor *was* the owner of the Property during the relevant 2012–2014 period and, thus, any failure to realize rental income was his own fault, not Schoonover's.  Ex. 214 at 11.

The Court finds and concludes Objectors failed to present sufficient evidence of Debtor's lack of ownership in 2012 to overcome the prima facie validity of the claimed exemption under the Second Homestead Declaration.

Objectors also appear to suggest that, if a homestead was created by this declaration, Debtor subsequently abandoned the Property, and lost the exemption. However, having created a homestead on unoccupied property by filing a declaration, creditors are on record notice of the claimed homestead without need for any additional filings.  Unlike with homesteads established by residency, vacating the property is of no consequence.  And, as this Court has stated, "[t]he Idaho Code does not reflect that, once a homestead has been claimed on unimproved property by a declaration filed under § 55-1004(2), this claim of exemption is later ever lost," unless expressly abandoned.  *Conley*, 1999 WL 33490228 at *11; *see also id.* at *12 ("What is the effect of Debtor's . . . declaration of nonabandonment?  The Court concludes that it had none.  Since physical presence on or absence from undeveloped property is immaterial to a homestead claimed by declaration under Idaho Code § 55-1004(2), there was no

---

[33]  As characterized by the state court, Debtor had claimed damages for the loss of boat storage rental income because he did not rent out the Property for that use in 2012–2014 due to his uncertainty as to his ownership of the Property.  Ex. 214 at 11.

MEMORANDUM OF DECISION - 23

risk of implied abandonment, and no need for the declaration of

nonabandonment.")

In this case, Debtor never resided at the Property as his primary residence.

But, he declared in October 2012 a future intent to reside on it, which was—and

remains—effective.

**CONCLUSION**

On the record before it, the Court finds and concludes that Debtor never

established an "automatic" homestead on the Property through occupation of the

same as a residence.  The Court further finds and concludes that Debtor had an

ownership interest in the Property on October 18, 2012 when he filed his

declaration that he intended to occupy the Property as a homestead.  Objectors

bore, and failed to meet, the burden of overcoming the presumptive effect of

Debtor's filed declaration of homestead exemption.  The Objection will be

overruled by separate order.

DATED: November 28, 2017



TERRY L. MYERS
CHIEF U. S. BANKRUPTCY JUDGE

MEMORANDUM OF DECISION - 24